UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL ALLEN, an individual; CAMP BENCH HOLDINGS, LLC, an Idaho limited liability company; CAMP BENCH RIVER HOLDING, LLC, an Idaho limited liability company; CAMPBELL FARMS, INC., an Idaho corporation,<br><br>      Plaintiffs,<br>v.<br><br>NEIL CAMPBELL, an individual,<br><br>      Defendant. | Case No. 4:20-cv-00218-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are Defendant Neil Campbell's Motion to File a Sur-Reply (Dkt. 33) and second Motion to Dismiss (Dkt. 35). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court GRANTS the Motion to File a Sur-Reply and DENIES the second Motion to Dismiss.

## II. BACKGROUND

Having secured a declaratory judgment in state court that an enforceable contract exists (the "Contract"), Plaintiffs Michael Allen and the business entity Plaintiffs listed in this Order's caption ("the Entities") filed their Complaint before this Court. Dkt. 1. Plaintiffs allege breach of contract and seek an order of specific performance, other equitable relief, and/or damages. *Id.* at 10–11. The Contract Plaintiffs allege Campbell has violated provides for Campbell to transfer his interest in the Entities in exchange for certain real property and $85,000. *Id.* ¶ 17. The Contract also calls for Campbell's release from any obligations relating to the Entities.[1] *Id.* The state court acknowledged the language of the Contract as follows:

> [Campbell] accepts the last verbal offer relayed by you on behalf of [Allen]. [Campbell] agrees to transfer his interest in Campbell Farms, Camp Bench, and Camp River to Allen in exchange for (1) the 180-190 acres identified in you [sic] November 20th letter, and the buildings, fixtures, and structures located thereon, free and clear of any encumbrance, debt, or lien, (2) the payment by [Allen] to [Campbell] of a lump sum of $85,000, (3) a mutual release between the parties, and (4) each party paying their own attorney fees—all contingent upon [Campbell]'s release from any obligations, including without limitation any personal guarantees, relating to these three entities.

*Id.*

Plaintiffs allege they were prepared to fulfill their end of the bargain only to receive a refusal on Campbell's part to perform. *See id.* ¶¶ 19–31. They go on to allege that they "tendered performance to Campbell—proposing an escrow agreement to accomplish the

---

[1] The parties dispute whether this provision is a duty or a condition precedent. The Court takes this issue up below.

transfer needed to (1) ensure all parties honor their obligations and (2) satisfy the title company assisting with the financing transaction that will satisfy the existing loans with the Bank." *Id.* ¶ 26. Plaintiffs continue their allegations, stating that "Campbell responded, through counsel . . . , that 'Your client Allen has not and cannot perform the requirements of the agreement'" and that "'Campbell will not be signing the documents attached to your email.'" *Id.* ¶¶ 30–31.

On May 13, 2020, Plaintiffs filed an Emergency Motion for Permanent Injunction. Dkt. 5. The Court did not hold an expedited hearing because Allen filed a Motion to Dismiss for lack of diversity jurisdiction (Dkt. 14), which appeared plausible on its face and gave the Court serious concerns as to its jurisdiction over this case. After thorough review and a hearing on the matter, however, the Court ultimately denied this first Motion to Dismiss. Dkt. 29.

The Court thereafter ordered Campbell to respond to Plaintiffs' Emergency Motion for an Injunction,[2] and has set a hearing for the same. Campbell filed his response (Dkt. 31), and Plaintiffs replied (Dkt. 32). As part of their Reply, Plaintiffs disclosed for the first time that a bank was taking the initial steps of foreclosure on one of the Entities' loans. *Id.* at 3. This prompted Campbell to move the Court for leave to file a sur-reply. Dkt. 33.

---

[2] Campbell should have responded to the motion several months prior to the Court's Order under Dist. Idaho Loc. Civ. R. 7.1(c)(1) and the Court's specific Order (Dkt. 8). He did not do so. Nevertheless, the Court provided a truncated time period for him to respond. *See* Dkt. 30. Campbell is warned that a failure "to timely file any response documents required to be filed under" the local rules in the future "may be deemed to constitute a consent to the sustaining of said pleading or the granting of said motion or other application." Dist. Idaho Loc. Civ. R. 7.1(e)(1).

Campbell also filed the pending second Motion to Dismiss. Dkt. 35. In the Motion to Dismiss, Campbell argues that the Entities lack standing and should be dismissed. He also argues that the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

Plaintiffs responded to both motions. They first objected to Campbell's request to file a sur-reply. Dkt. 34. They then disputed Campbell's bases for dismissal. Dkt. 36. Campbell replied on the issue of dismissal. Dkt. 37. Both motions are now ripe.

### III. DISCUSSION

The Court first addresses the two issues in the Motion to Dismiss: standing and failure to state a claim upon which relief may be granted. Then, having explained why the Court will not dismiss this case, the Court succinctly addresses the issue of a sur-reply.

**A. Standing**

Campbell's first contention is that the Entities lack standing and are not entitled to seek relief under 28 U.S.C. § 2202. That statute provides, "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." *Id.* Campbell claims that the Entities "were not parties to the [C]ontract . . . and did not obtain declaratory judgment from the Idaho state court. Thus, [they] did not suffer any injury." Dkt. 35-1, at 8. Campbell broadly concludes that none of the elements of

standing are met; however, all his arguments focus solely on the injury-in-fact element of standing.[3] Accordingly, the Court directs its focus to that element.

1. *Legal Standard*

Article III of the United States Constitution constrains the judicial power of federal courts to "cases" and "controversies." The doctrine of standing is rooted in the traditional understanding of what a case or controversy is under Article III. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). As such, federal courts have an obligation to determine that the litigants before them have Article III standing. *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019); *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) ("As a jurisdictional requirement, standing to litigate cannot be waived or forfeited."). The party invoking a federal court's jurisdiction must establish standing. *Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016); *Colwell v. Dep't of Health and Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). An absence of standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

At an "irreducible minimum," standing requires three elements to be met: (1) the party invoking federal jurisdiction must have suffered some actual or threatened injury; (2)

---

[3] The Court is aware that the parties have disputed the issue of standing elsewhere in their filings. Campbell raised the issue and these same arguments in his Response to Plaintiffs' Motion for Permanent Injunction. Dkt. 31, at 6–7. Plaintiffs confronted Campbell's arguments in their Reply. Dkt. 32, at 4–6. The Court will not address this issue anew at the scheduled hearing, even though it is raised in those briefs, because it does so in this Order.

the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury. *See, e.g.*, *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1102 (9th Cir. 2016). These elements are commonly referred to as injury-in-fact, causation, and redressability, respectively. Although the standing inquiry "often turns on the nature and source of the claim asserted," its primary focus is on "whether the plaintiff is the proper party to bring the suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (cleaned up).

2. *Analysis*

Campbell's argument that the Entities lack standing is unpersuasive because both premises it rests upon are without merit. First, contrary to Campbell's initial assertion, the Entities *are* parties to the Contract. The Contract identifies them by name. It refers to them as actors with duties, and it imposes specific obligations on them. Dkt. 32, at 5. Moreover, as the state court explained, "it was necessary for the [Entities] to be made specific parties to the [Contract] since Allen and Campbell represented themselves *as well as their interests in the entities*." Dkt. 36, at 3 (emphasis added). These facts establish that the Entities were indeed parties to the Contract.[4]

---

[4] Typically, referring to evidence outside of the pleadings would be inappropriate at the motion to dismiss stage, but here it is not because the material the Court refers to is the Contract, which is part of the pleadings, and other documents of public record from the previous state court trial. *Lee v. L.A.*, 250 F.3d 668, 687 (9th Cir. 2001); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("A

Idaho law supports this conclusion as well. Because Allen and Campbell were the only persons with interests in the Entities and acted as their agents, Allen and Campbell's decision to obligate the Entities to specific actions bound the Entities under Idaho contractual law. *See Primera Beef, LLC v. Ward*, 457 P.3d 161, 166 (Idaho 2020) ("An agent may bind a principal if the agent has actual authority." (cleaned up)); *Rowland v. Rowland*, 633 P.2d 599, 605 (Idaho 1981) (holding that action by a majority of the corporate board who also own majority of shares is binding on the corporation).

Next, Campbell's second argument—that the Entities did not obtain a declaratory judgment—is undermined by the language of the state court's ruling. In a ruling after the declaratory judgment, the state court plainly stated that the Entities obtained a declaratory judgment:

> Campbell asserts that he must be considered prevailing party against the entities since the entities did not prevail in any matter. However, *as evident from the complaint, the entities also sought a declaratory judgment as to the contract*. While there may have been standing issues as to the entities' ability to assert such claim, that issue was never litigated. Therefore, *the entities, along with Allen, were successful in obtaining declaratory judgment.*

Dkt. 36, at 4–5, Ex. A.

Campbell asserts that this was dictum and related only to the award of attorney fees and costs. Campbell also argues that, because the court did not amend its judgment to

---

court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." (cleaned up)). *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.").

include the Entities, the judgment does not extend to them. Dkt. 37, at 2. Campbell does not offer any supporting legal authority for these arguments.

The declaratory judgment is admittedly far from a paragon of clarity on this point. After all, the judgment says that Allen obtained a declaratory judgment that the Contract was enforceable, with no explicit reference to whether the Entities did. *See* Dkt. 1, at 53–54. Nevertheless, the state court's above-quoted comment elucidated its intent and the meaning behind the declaratory judgment—which the state court was indisputably better situated to know than this Court, seeing that it was construing its own judgment. In addition, it makes sense that the state court granted declaratory relief to the Entities since they were parties to the contract and named in the complaint, as explained above. Lastly, granting the Entities a declaratory judgment is in line with Idaho's Uniform Declaratory Judgment Act because they were "interested" or "affected" parties under the contract. *See* Idaho Code §§ 10-1202, 10-1213. Therefore, this Court finds that the Entities in fact did receive a declaratory judgment from the state court.

These conclusions serve to reject Campbell's contention that the Entities' lack standing in this case. They also fulfill the Entities' burden of establishing standing. Because they were parties to the Contract and received a declaratory judgment, the Entities have legal rights to sue under the existing and enforceable contract. Therefore, the Entities will not be dismissed and may proceed in this action.

**B. Failure to State a Claim**

Campbell also contends that the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6). The Court disagrees with this contention as well.

1. *Legal Standard*

Rule 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (cleaned up). "This is not an onerous burden." *Johnson*, 534 F.3d at 1122.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 682 (2009) (cleaned up).

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Id.* at 663. A court is

not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). In cases decided after *Iqbal* and *Twombly,* the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.,* 573 F.3d 728, 737 (9th Cir. 2009).

2. *Analysis*

At the outset, the parties quarrel over whether the Motion to Dismiss is properly before the Court since Campbell already filed a previous Motion to Dismiss. It is unnecessary for the Court to engage with this procedural question, however, because the Motion to Dismiss is substantively unmeritorious: Plaintiffs have not failed to state a ground for relief.

Turning to the merits, Campbell first argues that Plaintiffs have failed to state a claim because Plaintiffs have not alleged that all conditions precedent to Campbell's duty to perform have been satisfied. More specifically, Campbell argues that Plaintiffs have not alleged that Campbell has been released from all his obligations relating to the Entities—a provision he appears to assume is a condition precedent since he makes no argument as to why it is one. Ultimately, the Court concludes that the provision is a condition precedent, but the Court nonetheless concludes that Plaintiffs have met their burden at this stage.

"A condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due." *E.g.*, *Dengler v. Hazel Blessinger Family*

*Trust*, 106 P.3d 449, 454 (Idaho 2005). "A condition precedent is distinguishable from a promise or covenant in that a condition creates no right or duty of performance in itself and its non-occurrence does not constitute a breach of the contract." Although conditions precedent are not favored by Idaho courts, *Med. Recovery Servs., LLC v. Neumeier*, 415 P.3d 372, 377 (Idaho 2018), the question of whether a contractual provision is a condition precedent generally depends on what the parties intended, which in turn is "adduced from the contract itself." *Weisel v. Beaver Springs Owners Ass'n*, 272 P.3d 491, 500 (Idaho 2012) (cleaned up). So long as the language of the particular provision is plain and unambiguous, a court may determine that a condition precedent exists as a matter of law. *Id.*

Here, the Contract contains a single condition precedent. The relevant provision states that the other provisions of the Contract are "all contingent upon [Campbell]'s release from any obligations" related to the Entities. Dkt. 1, ¶ 17. What is telling is the use of the word "contingent," which the Idaho Supreme Court has held to indicate a condition precedent. *Dengler*, 106 P.3d at 454 (concluding that the provision that required the party to acquire an easement for the landlocked parcel of property was a condition precedent because it used the word "contingency"); *see also Contingency*, Black's Law Dictionary (11th ed. 2019) ("An event that may or may not occur in the future; a possibility."). Because the Court views this clause as an unambiguous expression that the rest of the Contract turns on its fulfillment, the provision is a condition precedent as a matter of law.

But this conclusion only gets Campbell halfway to his desired result. The second half of Campbell's argument is unconvincing. What Campbell either fails to see or neglects to see is that Plaintiffs are alleging that *his* refusal to perform is why the release from his obligations has not yet occurred. Idaho law makes clear that such an allegation, if substantiated, would support an order of specific performance under appropriate circumstances.

Under Idaho law, "[a] party seeking specific performance must allege and prove that all conditions precedent to the other party's duty to perform have been satisfied." *Hinkle v. Winey*, 895 P.2d 594, 599 (Idaho Ct. App. 1995). "Even where the defendant has repudiated the contract and has rejected a proffered tender of payment, the party seeking performance must show it is ready, willing and able to perform its obligations under the contract in the event that specific performance is ordered." *Id.* However, "[w]here a party is the cause of the failure of a condition precedent, he cannot take advantage of the failure." *Dengler*, 106 P.3d at 454. Indeed, there is a duty of reasonable performance in every contract. *Steiner v. Ziegler Tamura Ltd., Co.*, 61 P.3d 595, 599 (Idaho 2002); *see also Fish v. Fleishman*, 391 P.2d 344, 351 (1964) (quoting 5 Williston on Contracts, § 677 (3d ed. 1961) ("It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure.")); 81A C.J.S. *Specific Performance* § 47 (2020) ("[S]pecific performance will be decreed where the promisor hinders or prevents performance or occurrence of a condition.").

Here, as explained above, Plaintiffs allege they are ready, willing, and able to perform their end of the bargain, but that Campbell's refusal to enter into escrow is the sole impediment to their ability to do so. They allege they have secured approval of financing that will release Campbell from the existing loans to which he has obligations in the Entities. Dkt. 1, ¶ 19. They allege that a deed has been prepared and that the real property is ready to be conveyed to Campbell. *Id.* ¶¶ 20–24. They also allege Allen has the $85,000. *Id.* ¶ 25. They further allege they tendered performance by proposing escrow for the exchanges and that escrow is necessary to "(1) ensure all parties honor their obligations and (2) satisfy the title company assisting with the financing transaction that will satisfy the existing loans with the Bank." *Id.* ¶ 26. They lastly allege Campbell refused to proceed, thereby frustrating their ability to both fulfill the condition precedent and meet their contractual duties. *Id.* ¶¶ 30–34.

These allegations are sufficient to survive a motion to dismiss because they demonstrate that the only party precluding the performance of all the conditions of the Contract is Campbell. Campbell responds that this Court cannot rewrite the Contract to require him to submit to escrow. Plaintiffs counter that they are not asking the Court to rewrite the Contract; rather, they seek an order that Campbell fulfill his end of the bargain through escrow. While it is true that "[c]ourts do not have the power to rewrite contracts," *Kantor v. Kantor*, 379 P.3d 1080, 1093 (Idaho 2016), courts do have the power to supply reasonable terms and to provide equitable forms of relief, such as an order of specific performance. *Id.*; *Kessler v. Tortoise Dev., Inc.*, 1 P.3d 292, 298 (Idaho 2000) ("[S]pecific

performance is an equitable remedy . . . ."). It is well within the Court's equitable power to issue an order for Campbell to reasonably comply with the provisions of the Contract, whether it be through escrow or otherwise. Thus, Campbell's argument is unavailing.

Campbell next argues that Plaintiffs have admitted that they will not be able to obtain a release of Campbell's obligations from the bank because the bank is now proceeding with a foreclosure on one of the Entities' loans. Therefore, Campbell claims, his performance is excused because the condition precedent cannot be fulfilled. This gravely mischaracterizes Plaintiffs' statement.

Plaintiffs' statement was not that obtaining a release from the bank has become impossible; rather, it was that the bank has given notice that it is initiating the foreclosure process. *See* Idaho Code § 45-1506 ("[A]t least one hundred twenty (120) days before the day fixed by the trustee for the trustee's sale, notice of such sale shall be given . . . ."). At best for Campbell, the statement implies that at some point Plaintiffs will not be able to secure Campbell's release. It does not mean, however, that such is the case now.[5] Indeed, as Plaintiffs point out, the initiation of foreclosure proceedings does not preclude them from seeking alternative financing to satisfy the loan prior to the sale. *See* Idaho Code § 45-1508 (extinguishing the debtor's rights to satisfy a default at the point of the trustee sale). Therefore, this argument is unavailing because it wholly misinterprets Plaintiffs' statement.

---

[5] It also means that an expedited hearing is even more necessary.

Campbell lastly argues that there is no cognizable cause of action to require a party to enter into an after-the-fact escrow agreement. This argument misses the mark. Under Idaho law, and indeed all states' common law, specific performance is an equitable remedy, and therefore a specific cause of action is unnecessary. *Kessler*, 1 P.3d at 298 ("[S]pecific performance is an equitable remedy . . . ."). *Hinkle*, 895 P.2d at 598 ("The equitable remedy of specific performance of a contract is unique.").

In short, Plaintiffs have pleaded sufficient facts to support the remedies they seek, including, but certainly not limited to, an order of specific performance. Thus, the Court will deny Campbell's Motion to Dismiss. That said, it remains Plaintiffs' burden to prove that specific performance is both feasible and appropriate at the scheduled hearing on this matter.

## C. Sur-Reply

Campbell requests leave to file a sur-reply related to Plaintiffs' disclosure that the bank is proceeding on the foreclosure. "While the Federal Rules of Civil Procedure do not expressly permit the filing of a sur-reply, this Court has recognized that a [party]'s reply brief may justify a sur reply in appropriate circumstances." *Gordan Ocampo v. Corizon, LLC*, 2019 WL 1495251, at *3 (D. Idaho April 4, 2019). Leave to file a sur-reply is discretionary but should only be granted "where a valid reason for such additional briefing exists, such as the movant raises new arguments in its reply brief." *Hill v. England*, No. CVF05869RECTAG, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005); *see also Edwards v. Mondora*, 700 F. App'x 661, 664 (9th Cir. 2017).

An in-depth analysis on this point is unnecessary because both sides will have an ample opportunity to argue the issue Campbell seeks to address—and all other issues related to the requested injunction—at the scheduled hearing. However, the Court will allow Campbell to file his proposed sur-reply. While it was foreseeable that the bank would eventually proceed with foreclosure on one of the Entities' defaulted loans, as Plaintiffs point out, it is now known that the bank is in fact doing so. This was new information in Plaintiffs' Reply. Thus, the Court will allow Campbell the opportunity to file his proposed sur-reply and will consider it in conjunction with the arguments and evidence presented at the scheduled hearing.

## IV. ORDER

The Court HEREBY ORDERS:

1. Campbell's Motion to File a Sur-Reply (Dkt. 33) is **GRANTED**. He may file the proposed sur-reply attached to his motion.

2. Campbell's Motion to Dismiss (Dkt. 35) is **DENIED**.

3. A hearing on Plaintiffs' Motion for Permanent Injunction will be held, as previously scheduled, on December 22, 2020.

DATED: November 23, 2020

_____
David C. Nye
Chief U.S. District Court Judge