UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL ALLEN, an individual; CAMP BENCH HOLDINGS, LLC, an Idaho limited liability company; CAMP BENCH RIVER HOLDING, LLC, an Idaho limited liability company; CAMPBELL FARMS, INC., an Idaho corporation, <br><br>      Plaintiffs, <br> v. <br><br> NEIL CAMPBELL, an individual, <br><br>      Defendant. | Case No. 4:20-cv-00218-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

## I.    INTRODUCTION

There are several motions pending before the Court. The first is Plaintiffs Michael Allen and the above-captioned business entities' ("the Entities") Emergency Motion for a Permanent Injunction. Dkt. 5. On December 22, 2020, the Court held a hearing on this matter. The second set of motions are Allen and the Entities' Motions in Limine regarding evidence to be presented at that injunction hearing. Dkts. 44, 46, 47, 49. The Court took the Motion for Permanent Injunction under advisement and informed the parties that the evidence referred to in the motions in limine would be given the weight outlined by the Court in its written ruling.

The last matter before the Court is Allen's Motion to Dismiss Defendant Neil

Campbell's counterclaims.[1] Dkt. 51. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide this final motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court GRANTS the Emergency Motion for Permanent Injunction, GRANTS in PART and DENIES in PART the Motions in Limine, and GRANTS in PART and DENIES in PART the Motion to Dismiss.

## II.    BACKGROUND

A description of the allegations and procedural history of this case is included in the Court's previous Order (Dkt. 39), which the Court will not reiterate in full here. As a brief summary, this case arises from a business arrangement between Allen and Defendant Neil Campbell that soured. After their business disputes arose, Allen and Campbell formed a contract (the "Contract") to discontinue their business arrangement. When Campbell later asserted that the Contract had not been legally formed, Allen and the Entities sued and secured a declaratory judgment from an Idaho state court that the Contract between the parties is enforceable. Dkt. 7, at 2. The Contract contemplates that Allen will convey real property and money to Campbell in exchange for Campbell's interest in the Entities. The specific terms of the Contract, as found by the state court, are the following:

---

[1] Because all the counterclaims are against only Allen, and not the Entities, the Court refers to the Motion to Dismiss solely as Allen's throughout this Order.

> [Campbell] accepts the last verbal offer relayed by you on behalf of [Allen]. [Campbell] agrees to transfer his interest in Campbell Farms, Camp Bench, and Camp River to Allen in exchange for (1) the 180–190 acres identified in you [sic] November 20th letter, and the buildings, fixtures, and structures located thereon, free and clear of any encumbrance, debt, or lien, (2) the payment by [Allen] to [Campbell] of a lump sum of $85,000, (3) a mutual release between the parties, and (4) each party paying their own attorney fees—all contingent upon [Campbell]'s release from any obligations, including without limitation any personal guarantees, relating to these three entities.

*Id.* at 3.

In the time since the state court entered the declaratory judgment, and despite Allen and the Entities having tendered performance, Campbell has refused to perform his end of the bargain. Campbell's refusal precipitated this lawsuit. On May 8, 2020, Allen and the Entities filed their Complaint with this Court. Dkt. 1. In it, they allege that they have tendered performance and that Campbell has refused to perform, thereby breaching the Contract. Allen and the Entities seek specific performance, other equitable relief, and/or damages. *See* Dkt. 1, at 10–11.

Shortly after filing their Complaint, Allen and the Entities filed a Motion for Permanent Injunction seeking an order of specific performance. Dkts. 5, 7. A ruling on that motion was delayed, however, due to various procedural issues, namely, whether the Court has subject-matter jurisdiction over this case, *see* Dkt. 29, whether the Entities have standing, *see* Dkt. 39, at 4–8, and whether the claims were properly stated, *see id.* at 8–15. Once it dealt with those issues, the Court set a hearing on the motion for December 22, 2020. Dkt. 38.

Shortly before the hearing, Campbell filed an Answer to the Complaint, including

MEMORANDUM DECISION AND ORDER - 3

affirmative defenses and various counterclaims. Dkt. 41. Campbell's affirmative defenses relate to the validity of the Contract.[2] *Id.* at 13–15. Campbell's counterclaims against Allen include breach of fiduciary duty, conversion, unjust enrichment, two counts of improper business accounting, and a declaratory judgment that the Contract is void. *Id.* at 25–30.

The morning of the hearing, Allen and the Entities filed four Motions in Limine. Dkts. 44, 46, 47, 49. The Court heard oral argument on those motions at the beginning of the hearing. The Court ruled on some of the motions—or certain aspects of the motions—during the course of the hearing, and withheld ruling on others. The Court briefly outlines its ruling with respect to each motion to frame the evidence considered in the Permanent Injunction Motion.

The first Motion in Limine involved whether Daryl Olsen, who is the Senior Vice President and Area Manager of Alliance Title and Escrow, could testify regarding his knowledge of the escrow arrangements in this case and potentially as an expert regarding escrow matters in general. *See generally* Dkt. 44. The Court ruled that Olsen could testify as a fact witness but withheld ruling on whether he could offer expert testimony. Dkt. 52, at 13. However, Allen and the Entities did not move to qualify Olsen as an expert at the hearing. *See id.* at 141. Consequently, the First Motion in Limine was GRANTED in PART and is now DENIED in PART as MOOT.

The second Motion in Limine sought to exclude evidence arising prior to the date

---

[2] The Court notes that it has already ruled against Campell on his affirmative defenses regarding lack of subject matter jurisdiction and lack of standing. *See generally* Dkts. 29, 39. Therefore, such defenses are stricken.

the Contract was formed, particularly evidence regarding the Contract's validity. Dkt. 46. Allen and the Entities explained that they filed the Second Motion in Limine due to Campbell's Answer, which included affirmative defenses and counterclaims related to the Contract's validity. Dkt. 52, at 14. *See generally* Dkt. 41. The Court explained that the hearing was to address only the issues related to the permanent injunction, and not to consider counterclaims or monetary damages. The Court withheld a ruling on evidence purportedly outside the scope of the injunction until the parties made their specific objections. Dkt. 52, at 17. Therefore, the Second Motion in Limine is now DENIED as MOOT.

The third Motion in Limine sought admission of Allen and the Entities' proposed exhibits 1019 through 1026, which comprised emails between their counsel and Campbell's counsel. Dkt. 47. The emails involved Allen and the Entities' proposals for performance of the Contract. The Court DENIED the motion and withheld a ruling on the matter. Dkt. 52, at 23. The Court stated that it had "to look at each individual email on its own to decide whether or not it's admissible," and that it was deferring its ruling, explaining that the Court would make its rulings as each one came up during the course of the day's proceedings. *Id.* Ultimately, Allen and the Entities sought to admit only exhibits 1023 and 1024, which were emails of Allen attempting to tender performance through his attorney and Campbell's refusals to perform through his attorney. The Court admitted the documents subject to relevancy and ruled that they were authentic and had a proper foundation during the hearing. The Court concludes that the emails are relevant because they have a tendency to prove at least several consequential facts: Allen's attempted

performances, Campbell's refusals to reasonably cooperate in performance of the condition precedent, and Campbell's breach of his contractual duties.[3]

The fourth and final Motion in Limine requested the Court to preclude the "wholesale admission of deposition testimony" and to instead admit "specifically designated portions" of the proposed deposition testimony. Dkt. 49, at 1. At the hearing, Allen and the Entities conceded that the fourth Motion in Limine became moot when Campbell agreed, via email, to admit only specified portions of the depositions. The Court agreed and DENIED the motion as MOOT. Dkt. 52, at 24.

After addressing Allen and the Entities' motions in limine, the Court turned to the merits of the injunction hearing. The parties presented various exhibits, witnesses, and arguments in favor of their respective positions. The injunction hearing lasted one day. At the end of the hearing, the Court ordered closing arguments and rebuttal arguments to be filed as written memoranda. That briefing is now complete, and the Permanent Injunction Motion is ripe for review. Dkts. 53, 54, 55, 56.

Approximately a week after the hearing, Allen filed his Motion to Dismiss each of Campbell's counterclaims. Dkt. 51. The Court has considered the briefing and evidence submitted during the hearing, as well as the parties' written closing arguments and the briefing on the Motion to Dismiss. For the reasons set forth below, the Court GRANTS in PART and DENIES in PART the Motion to Dismiss. The Court also concludes that an

---

[3] To be clear, these emails are not the only evidence proving these facts, but they are relevant and fully admitted into the record.

order of specific performance is appropriate under the circumstances of this case, and accordingly GRANTS the Permanent Injunction Motion.

## III.    DISCUSSION

Because the Motion to Dismiss deals with issues regarding the Contract's validity, the Court addresses it first. Thereafter, the Court addresses the Permanent Injunction Motion.

### A. Allen's Motion to Dismiss (Dkt. 51)

Allen makes three principal contentions for dismissing all Campbell's counterclaims. First, he argues that the doctrine of res judicata precludes Campbell from asserting his counterclaims since they could have and should have been raised in the state court action. Second, Allen asserts that the plain language of the Contract, as well as the covenant of good faith and fair dealing, preclude Campbell from denying Allen the benefit of a release from all claims. Last, he argues that Campbell's request for a declaratory judgment fails as a matter of law because the Court does not have power to reverse the state court's judgment declaring that the Contract is valid.

#### 1.  Legal Standard

The standard for failure to state a claim is a familiar one. Rule 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted).

MEMORANDUM DECISION AND ORDER - 7

## 2. *Analysis*

At the outset, Campbell claims there is a fundamental problem in Allen's motion: Allen does not argue that Campbell's counterclaims are factually insufficient but instead relies on affirmative defenses found in Federal Rule of Civil Procedure 8(c)(1), namely, res judicata and release. Campbell faults Allen for doing this and suggests that affirmative defenses cannot provide a basis for a motion to dismiss. This is legally incorrect.[4]

Parties may assert an affirmative defense in a motion to dismiss, and by that same token, courts may dismiss claims based on affirmative defenses. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *ASARCO, LLC v. Union Pacific R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013); *Sams v. Yahoo! Inc.,* 713 F.3d 1175, 1179 (9th Cir. 2013). The Ninth Circuit instructs that "[w]hen an affirmative defense is obvious on the face of a complaint, . . . a defendant can raise that defense in a motion to dismiss." *Rivera*, 735 F.3d at 902. The classic example of this is when a statute of limitations has run. *See Jones*, 549 U.S. at 215 ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."). Thus, binding caselaw permits Allen's course of action in his motion.

Tellingly, the cases Campbell cites in support of his argument contemplate affirmative defenses—and more specifically res judicata—as a basis for Rule 12(b)(6)

---

[4] Of course, this is factually inaccurate as well because it neglects Allen's last argument, which relates to whether the declaratory judgment fails as a matter of law. The Court sets this issue aside for the moment and takes it up below.

dismissals. *See Scott v. Kuhlmann*, 754 F.2d 1377, 1378 (9th Cir. 1984) (per curiam) (affirming the dismissal of a claim on a motion to dismiss due to the defense of res judicata)[5]; *Guam Investment Co. v. Central Building, Inc.*, 288 F.2d 19 (9th Cir. 1961) ("[T]here are exceptions to the general rule that the defense of res judicata must be affirmatively pleaded . . . ."); *Concordia v. Bendekovic*, 693 F.2d 1073 (11th Cir. 1982) ("[A] party may raise a res judicata defense by motion rather than by answer where the defense's existence can be judged on the face of the complaint.").

The issue before the Court therefore depends on whether Allen's affirmative defenses are readily apparent. The Court first addresses res judicata, then release, then the arguments regarding the declaratory judgment cause of action.

### i.   Res Judicata

The Court concludes that res judicata bars Campbell from disputing the validity of the Contract, but it does not preclude him from asserting any of his other claims.[6] In a diversity action, such as this one, state law rules of claim preclusion apply to an earlier state court judgment. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508

---

[5] The quote from *Scott* that Campbell includes in his brief is the first half of the following sentence, which explicitly states that affirmative defenses may be raised in a motion to dismiss: "Ordinarily affirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact." 746 F.2d at 1378 (cleaned up).

[6] The preferred mechanism for Allen to dispute Campbell's affirmative defenses is a motion to strike under Rule 12(f). *See* Fed. R. Civ. P. 12(f); Fed. R. Civ. P. 12 advisory committee's note (1946) (explaining that one of the specific purposes of Rule 12(f) is to give parties a tool to raise the insufficiency of a defense); *see also Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *MacLay v. M/V SAHARA*, 926 F. Supp. 2d 1209, 1217 (W.D. Wash. 2013). Although Allen has not filed such a motion, the analysis would be the same as to the affirmative defenses related to the validity of the Contract. *MacLay*, 926 F. Supp. 2d at 1217. Consequently, Campbell's affirmative defenses regarding the Contract's validity are also stricken. The Contract has been adjudged as valid and enforceable, and all arguments that there is an invalid Contract are barred.

(2001). "In order for claim preclusion to bar subsequent litigation, a litigant must show that the current case and the previous case involve the same parties, the same claim, and the first case ended in a final judgment." *Carter v. Gateway Parks, LLC*, No. 47246, 2020 WL 6387860, at *5 (Idaho Nov. 2, 2020). The same claim element is met "not only as to every matter offered and received to sustain or defeat the claim [in the earlier action], but also as to every matter which might and should have been litigated in the first suit." *Andrus v. Nicholson*, 186 P.3d 630, 633 (Idaho 2008) (quoting *Joyce v. Murphy Land & Irrigation Co.*, 208 P. 241, 242–43 (Idaho 1922)). The policies underlying the res judicata doctrine are the public interests of consistent results and judicial economy and the private interest of avoiding the burdens of twice defending a suit. *Arizona v. California*, 530 U.S. 392, 412 (2000) (allowing courts to invoke the doctrine sua sponte under certain circumstances to promote judicial economy); *see also Ticor Title Co. v. Stanion*, 157 P.3d 613, 617 (Idaho 2007).

Here, it is clear the state court action involved the same parties, a final judgment, and the same claim that a valid contract exists between the parties, but it did not involve any other claims. As this Court previously recognized:

> Ultimately, the Idaho state court entered a declaratory judgment that a contract existed between Allen and Campbell. Dkt. 17, at 6. Nevertheless, the court made clear that it had not made a ruling on any other issues, stating, "To the extent Allen now seeks to pursue a breach of contract/specific performance action based upon post-judgment developments, such is not part of this action and should be pursued in a new separate action." *Id.* at 6–7.

Dkt. 29, at 3–4. The state court did not address breach of contract or other disputes related to the Contract. Indeed, that is the very reason this action is before this Court.

MEMORANDUM DECISION AND ORDER - 10

Both Campbell and Allen take issue with this conclusion. Campbell argues that none of his claims should be dismissed, claiming that Allen has not identified specific allegations in Campbell's counterclaims that were a part of the state court judgment. For his part, Allen argues it was incumbent on Campbell to assert all his claims in the state court action because Allen and the Entities claimed to be released from Campbell's claims. Dkt. 51-1, at 4. Allen also points out that Campbell engaged in discovery on some of his current counterclaims.

Both parties are incorrect. Campbell's argument is unpersuasive because Allen has identified specific instances in which Campbell acknowledges the state court judgment of an existent valid contract between the parties. *See* Dkt. 41, ¶¶ 17, 22, 23, 37. And that state court judgment, as recognized by this Court, was of course directly related to Allen's claim that the Contract is valid and enforceable. Thus, Campbell is incorrect that none of his claims are barred since his claims related to the validity of the Contract involved prior litigation between the same parties, same claim, and a final judgment—i.e., all three elements of res judicata.

Allen's argument goes awry inasmuch as he argues that issues and claims other than the issue of the Contract's validity are the "same claims." They were not since the state court action was limited to the single issue. Under Idaho law, whether the claims are the same is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Ticor*, 157 P.3d at 620 (cleaned up). These factors

indicate that the other counterclaims are not the same. They do not simply represent different theories of the same claims, but new, separate claims with different underlying actions, origins, motivations, and a totally separate unit of litigation. Indeed, Allen himself was not permitted to pursue further claims, such as a breach of contract action, in the state court, which again is why he initiated this action. Moreover, whether a party engages in discovery on a particular issue does not mean it is barred under the doctrine of res judicata since discovery itself is indisputably not a claim.

In short, Allen is correct that res judicata bars Campbell's counterclaims and defenses to the extent that they relate to the validity and enforceability of the Contract. The rest of Campbell's counterclaims, however, are not so precluded.

<u>ii.  Release</u>

Allen next argues that Campbell's counterclaims are barred by the mutual release in the Contract and its implied covenant of good faith and fair dealing. Campbell counters that there is no release yet as the condition precedent in the Contract has not yet been performed. Campbell is correct. Allen's argument is slightly premature under the terms of the Contract. Once the parties follow this Order, and the conditions of the Contract are performed, the release will then take effect. The point of a mutual release is to allow the parties to return to life free from their dealings with one another after they perform their respective contractual obligations. That is greatly needed in this case and will take effect

once the parties perform each of their respective obligations under the Contract.[7]

### iii.   Declaratory Judgment that the Contract Is Void

To the extent that Campbell's sixth counterclaim seeks a declaratory judgment that the Contract is void in general, such a claim is barred by res judicata for the reasons explained above. Additionally, such a claim is not properly before the Court due to the *Rooker–Feldman* doctrine. "[U]nder . . . the *Rooker–Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). "Federal district courts lack jurisdiction to review or set aside state court judgments; nor can a federal court adjudicate issues that are 'inextricably intertwined' with those adjudicated by the state court." *Edwards v. Mills*, No. 1:17- CV-00128-CWD, 2017 WL 1382911, at *2 (D. Idaho Apr. 10, 2017) (cleaned up). To hold that the Contract is void would fly in the face of this doctrine. Therefore, the claim in general is barred.

---

[7] Although the Court already concluded that there was a condition precedent in the Contract (Dkt. 39, at 11), Allen and the Entities argue that the condition was not a condition precedent, but a condition subsequent (Dkt. 53, at 13 n.2). "A condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due." *E.g.*, *Dengler v. Hazel Blessinger Family Trust*, 106 P.3d 449, 454 (Idaho 2005). A condition subsequent, on the other hand, "presumes a valid contract and refers to a future event, which divests a preexisting contractual liability. Thus, a contract that *is conditioned to become void on a specified event* is one subject to a condition subsequent" *Lakeland True Value Hardware, LLC v. Hartford Fire Ins. Co.*, 291 P.3d 399, 408 (Idaho 2012) (emphasis added) (quoting 17A C.J.S. § 451).

Here, the relevant provision states that the other provisions of the Contract are "all contingent upon [Campbell's] release from any obligations" related to the Entities. Dkt. 39, at 11. This is a condition precedent because it does not make the Contract void on a specified event. Rather, it expresses that Campbell's release must occur for all other duties to be in place. In other words, the other duties are dependent on Campbell's release, which was an uncertain event, much like the provision in *Dengler*, 106 P.3d at 454. A lack of terms specifying that the provision would void the Contract is material here indicating that the provision is not a condition subsequent. Therefore, the Court once again holds that the provision is a condition precedent.

To the extent the cause of action seeks to litigate such a claim based on events occurring *after* the state court judgment, Campbell's own allegations and the Court's conclusion in this Order identify why the Contract has not been fulfilled: it is due to Campbell's own resistance to the enforcement of the Contract. Therefore, Campbell cannot justly complain that delay has been a breach of contract on Allen's part. *See infra* Section B.2.i. Allen is quite right that there "is no basis to void" the state court judgment because he and the Entities have not had "a fair opportunity to perform until Campbell's campaign to undermine the [C]ontract set out" in the state court judgment is ended. Dkt. 51-1, at 6.[8] Consequently, Campbell's sixth counterclaim fails as a matter of both law and equity.

### iv.  Conclusion

For the foregoing reasons, the Court dismisses Campbell's counterclaims and strikes Campbell's affirmative defenses regarding the validity of the Contract. Campbell's other counterclaims are not dismissed at this time. Accordingly, Allen's motion is GRANTED in PART and DENIED in PART.

## B. Emergency Motion for Permanent Injunction (Dkts. 5, 7)

The Court now turns its attention to the Permanent Injunction Motion and Allen's

---

[8] Campbell argues that his claim for a declaratory judgment should survive because Allen clearly understands the grounds upon which it rests. In support of this argument, Campbell quotes Allen's arguments in the Motion to Dismiss summing up Campbell's claim. But this argument wholly misses the mark. As the Court noted above, "[a] Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson*, 534 F.3d at 1121. This case highlights two separate avenues for dismissal. Allen's arguments for dismissal relate to the first basis—lack of a cognizable theory—whereas Campbell's argument addresses the second avenue for dismissal—insufficient facts. Campbell's argument is unavailing because Campbell's declaratory judgment claim is barred by res judicata and the *Rooker–Feldman* doctrine, and thus lacks a cognizable theory.

request for an order of specific performance against Campbell.

    *1. Legal Standard*

District courts have authority to order a permanent injunction by way of their equitable powers and pursuant to Federal Rule of Civil Procedure 65(d). *See eBay Inc. v. MercExch., LLC,* 547 U.S. 388, 391 (2006). Additionally, in this case, under 28 U.S.C. § 2202, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted . . . against any adverse party whose rights have been determined by such judgment." Injunctions are among the available remedies a court can grant based on a declaratory judgment. *Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory judgment can then be used as a predicate to further relief, including an injunction."); *Vermont Structural Slate Co. v. Tatko Bros. Slate Co.*, 253 F.2d 29, 30 (2d Cir. 1958); *Am. Forest Council v. Shea*, 172 F. Supp. 2d 24, 29 (D.D.C. 2001) ("The very language of § 2202 of the Declaratory Judgment Act indicates that the prevailing party in a declaratory judgment may seek further relief in the form of damages or an injunction." (cleaned up)). Thus, it is well within the Court's power to issue a permanent injunction in this case.

Injunctive relief "is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "The purpose of a *preliminary* injunction is to preserve the status quo pending a resolution on the merits," *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (emphasis added), whereas a *permanent* injunction serves a distinct function: "A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action

. . . against a defendant and that equitable relief is appropriate." *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2013 WL 890126, at *3 (N.D. Cal. 2013) (cleaned up). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc.*, 547 U.S. at 391

      To be entitled to a permanent injunction, a plaintiff must demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justifies a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction. *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013); *see also eBay Inc.*, 547 U.S. at 391; *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12 (1987) (noting that the standards for preliminary injunctions and permanent injunctions are "essentially the same" except that a plaintiff must show actual success for a permanent injunction rather than a likelihood of success on the merits for a preliminary injunction).[9] "These commonplace considerations applicable to cases in which injunctions are sought in the federal courts reflect a practice with a background of several hundred years of history." *Weinberger v. Romero-Barcelo*,

---

[9] The Court recognizes that legal authorities are split on whether a permanent injunction in a diversity jurisdiction case requires a federal court to apply federal law or state substantive law. *New Mexico ex rel. Balderas v. Real Estate Law Ctr., P.C.*, 401 F. Supp. 3d 1229, 1351 n.93 (D.N.M. 2019) ("Some unclarity persists whether permanent injunctions involve state substantive law such that the court should apply state law standards."); *id.* (noting that a "majority of courts" directly addressing the issue "categorize[] permanent injunctions as substantive law."); *see also Tri-Dam v. Yick*, No. 111CV01301AWISMS, 2016 WL 4061348, at *5 (E.D. Cal. July 28, 2016). The Court need not and does not, however, hurl itself into the fray of this legal issue because, for the reasons set forth in this order, Allen and the Entities are entitled to an order of specific performance and a permanent injunction under both Idaho law and federal law.

456 U.S. 305, 313 (1982) (cleaned up). With these principles firmly in mind, the Court turns to the propriety of a permanent injunction in this case.

### 2. *Analysis*

Each of the five factors of a permanent injunction are met in this case.

#### i. Actual Success on the Merits

Allen and the Entities have proven that Campbell has breached the Contract and that specific performance is warranted under Idaho law. As recognized by the Idaho state court in its declaratory judgment, the Contract plainly required Campbell to convey his interest in the Entities to Allen. Despite Allen and the Entities tendering performance of their end of the bargain, Campbell still refuses to fulfill his contractual obligation. Campbell's sole argument that Allen and the Entities cannot succeed on the merits is that they cannot fulfill the condition precedent that Campbell be "released[d] from any obligations" related to the Entities.[10] *See* Dkt. 39, at 11. Because Campbell is the reason the condition precedent cannot be fulfilled, this argument is without merit.

As the Court has previously explained, "[a] party seeking specific performance must allege and prove that all conditions precedent to the other party's duty to perform have been satisfied." *Hinkle v. Winey*, 895 P.2d 594, 599 (Idaho Ct. App. 1995). "Even where the defendant has repudiated the contract and has rejected a proffered tender of payment, the party seeking performance must show it is ready, willing and able to perform its obligations under the contract in the event that specific performance is ordered." *Id.*

---

[10] Campbell's arguments that Allen has not proven the injunction factors are met are without merit. As explained below, Allen has presented adequate evidence for the Court to find all five factors met here.

MEMORANDUM DECISION AND ORDER - 17

However, "[w]here a party is the cause of the failure of a condition precedent, he cannot take advantage of the failure." *Dengler v. Hazel Blessinger Family Trust*, 106 P.3d 449, 454 (Idaho 2005). Indeed, there is a duty of reasonable performance in every contract. *Steiner v. Ziegler Tamura Ltd., Co.*, 61 P.3d 595, 599 (Idaho 2002); *see also Fish v. Fleishman*, 391 P.2d 344, 351 (1964) ("It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." (quoting 5 Williston on Contracts § 677 (3d ed. 1961)); 81A C.J.S. Specific Performance § 47 (2020) ("[S]pecific performance will be decreed where the promisor hinders or prevents performance or occurrence of a condition.").

Here, Campbell's own actions excuse performance of the condition precedent before Campbell's performance because his refusal to fulfill his contractual duties through escrow is all that is preventing the fulfillment of the Contract. After all, Allen and the Entities have alleged and now proven that they are ready, willing, and able to perform their obligations under the Contract and fulfill the condition precedent upon Campbell's performance. To be specific, they have shown that they have secured approval of financing that will release Campbell from the existing loans to which he has obligations in the Entities. They have deeds prepared to transfer the real property to Campbell. Allen has shown that he has $85,000 to transfer to Campbell. All that remains is for Campbell to submit to escrow. Consequently, by refusing to convey his interest in the Entities, despite tendered performance, Campbell has breached the Contract and has excused the

requirement that the condition precedent be fulfilled before he performs.[11]

An order of specific performance is appropriate in this case. Under Idaho law, "[t]he decision to grant specific performance is a matter within the district court's discretion." *Kessler v. Tortoise Dev., Inc.*, 1 P.3d 292, 298 (Idaho 2000). "Specific performance is an extraordinary remedy that can provide relief when legal remedies are inadequate." *Id.* When deciding whether to order specific performance, "the court must balance the equities between the parties[.]" *Id.* "The remedy of specific performance may be invoked where necessary to complete justice between the parties. The object of specific performance is to best effectuate the purpose for the contract is made . . . ." *Id.* at 396–397 (quoting 81A C.J.S. Specific Performance § 2 (2011)).

To begin, an injustice would occur in this case without an order of specific performance because Allen and the Entities would be irreparably injured. Plaintiffs have proven that without Campbell's performance their loan will fall through, which in turn will result in the foreclosure of buildings and other real property Plaintiffs have developed and improved through unquantifiable time, energy, and money. Further, Allen will face the potential of the bank moving upon his personal assets due to his personal guarantee on the loan. Even in the event the foreclosure somehow did not happen—a proposition that would require the bank to stop dealing in the regular course of its business—Campbell would continue to reap additional benefits from the Entities from which he has agreed to relinquish an interest. Along that same vein, Campbell could disrupt business going

---

[11] Of course, the condition precedent must still be fulfilled, just not before Campbell performs given the circumstances of this case.

forward. The loss of the real property alone, which Plaintiffs have improved and developed in a unique manner to their business interests, is an irreparable injury. No sum certain of money can make Plaintiffs whole were they to lose the property. The other injuries add more layers to the irreparable nature of the injury. Thus, justice calls for specific performance in this case.

For his part, Campbell argues only that Allen and the Entities have no evidence of irreparable harm. Dkt. 31, at 12. This argument is wholly unfounded. As noted above, there is substantial evidence that the harm here would be irreparable. Whatever Campbell's reasons for not performing his obligations under the Contract, ordering him to do so now is just and proper. Stated differently, the Court does not discern anything about an award of specific performance to be "unjust, oppressive, or unconscionable." *Fazzio*, 249 P.3d at 397; *Kessler*, 1 P.3d at 298. To the contrary, fairness favors fulfillment of the Contract.

Moreover, here there is a presumption that legal remedies are inadequate because there are various real property interests resting on the fulfillment of the Contract. *See Fazzio v. Mason*, 249 P.3d 390, 396 (Idaho 2011) (recognizing the presumption that damages are inadequate when land is involved due to the uniqueness of land); *Perron v. Hale*, 701 P.2d 198, 202 (Idaho 1985) (noting when land is involved, "the non-breaching party need not make a separate showing of the inadequacy of damages"). Not only is the real property that must be conveyed to Campbell involved, *Perron*, 701 P.2d at 202 (explaining that specific performance is available to both the transferor and transferee of real property), other buildings and land that are cross-collateralized on loans could be lost.

The balance of equities also tips strongly in favor of issuing the permanent

MEMORANDUM DECISION AND ORDER - 20

injunction. In the event the Court does not order specific performance, Allen and the Entities will be irreparably injured, as outlined above.[12] Campbell, on the other hand, would only endure the relatively minor imposition of drafting the papers conveying his interests in the Entities to Allen and submitting them to escrow—actions which he indisputably agreed to do. *See Fazzio*, 249 P.3d at 397 (noting that the individuals were receiving "nothing more than they would have received had [the other party] fulfilled his obligations under the settlement agreements"). Campbell is also very familiar with escrow arrangements, as he attested at the hearing.

A couple of other factors militate in favor of ordering specific performance in this case. Allen and the Entities have expended time, money, resources, and energy developing the buildings that are cross-collateralized and could be lost. *See Fazzio*, 249 P.3d at 396 (explaining that the party's alteration of the property supported specific performance); *Perron*, 701 P.2d at 203 (noting that the alteration of property, among other factors, "militate[s] for the grant of specific performance"). Further, the Contract can easily be enforced. *See Perron*, 701 P.2d at 203 (explaining that another factor that "militate[s] for the grant of specific performance" is whether it "can be easily enforced"). Campbell could very easily draft the appropriate documents to convey his interest in the Entities to Allen and submit them to escrow. Alternatively, and even more easily, he could simply sign the document that Allen has prepared. Moreover, as Allen and the Entities note, in the event that Campbell still refused to perform, it would be within the Court's power to order

---

[12] Interestingly, Campbell would be harmed as well because he also has a personal guarantee on the loans at risk.

someone else to do so on Campbell's behalf, or to simply divest him of his interest on its own pursuant to Federal Rule of Civil Procedure 70(b).[13] In short, no difficult or extraordinary measures need be taken for either Campbell or the Court to see that an order of specific performance is carried out.

In sum, Allen and the Entities have proven actual success on the merits. Campbell is breaching the Contract by not conveying his interest in the Entities, and the equitable considerations support the Court's discretionary award of specific performance in this case.

### ii.   Irreparable Injury

As outlined above, it is clear that Allen and the Entities will experience irreparable injury—namely, the loss of real property and other valuable assets—in the absence of an injunction. *See Investors v. Bank of Am., NA*, 585 F. App'x 742, 742–43 (9th Cir. 2014) (holding that state law governs whether harm is irreparable in a diversity action and that the harm was irreparable because it involved the loss of real property); *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064–65 (9th Cir. 2003) (state law applies to determine whether an injury is irreparable in a diversity action). Therefore, this factor also weighs in favor of a permanent injunction.

### iii.   Inadequate Remedies at Law

Remedies at law are presumed inadequate in this case due to the real property interests that are at stake and for the reasons explained above. Thus, this factor supports the issuance of a permanent injunction as well.

---

[13] Campbell is also warned that certain circumstances would provide the Court authority to hold him in contempt if he does not comply with this Order. Fed. R. Civ. P. 70(e).

### iv.   Balance of Hardships

Again, for the reasons explained above, the balance of hardships strongly tips in favor of issuing the permanent injunction. Therefore, this factor also supports the issuance of the requested permanent injunction in this case.

### v.   Public Interest

The public interest of the enforcement of contracts, particularly when they are so easily enforceable like the one here, supports the issuance of the permanent injunction as well.

### vi.   Conclusion

For the foregoing reasons, the Court hereby exercises its equitable discretion to issue a permanent injunction in this case. The equitable factors for specific performance under Idaho law support the Court's discretionary decision to issue a permanent injunction. And all five permanent injunction factors support such an order. The specific terms of the injunction and action required on Campbell's part are included in the following order. *See* Fed. R. Civ. P. 65(d)(1).

## IV.   ORDER

The Court HEREBY ORDERS:

1.   ORDER OF SPECIFIC PERFORMANCE: Campbell shall assign his interests in the Entities to Allen through an escrow arrangement to be coordinated by Allen. Campbell shall do so no later than seven (7) calendar days from the date of this Order. After Campbell does so, the parties shall perform their respective obligations under the Contract.

MEMORANDUM DECISION AND ORDER - 23

2.      Plaintiffs' Emergency Motion for Permanent Injunction (Dkt. 5) is
         GRANTED.

3.      Plaintiffs' First Motion in Limine (Dkt. 44) is GRANTED in PART and
         DENIED in PART as MOOT.

4.      Plaintiffs' Second Motion in Limine (Dkt. 46) is DENIED as MOOT.

5.      Plaintiffs' Third Motion in Limine (Dkt. 47) is DENIED.

6.      Plaintiffs' Fourth Motion in Limine (Dkt. 49) is DENIED as MOOT.

7.      Plaintiffs' Motion to Dismiss (Dkt. 51) is GRANTED in PART and DENIED
         in PART.

    a.  The motion is GRANTED to the extent it seeks dismissal of Campbell's
        counterclaims regarding the validity of the Contract. Such claims are
        dismissed with prejudice.

    b.  The motion is DENIED with respect to Campbell's other counterclaims.
        Such claims may proceed until the mutual release provision of the
        Contract is in effect.

8.      The Court retains jurisdiction over this case to ensure its Order is enforced
         and for all other claims and issues moving forward.

DATED: February 25, 2021

David C. Nye
Chief U.S. District Court Judge