UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL ALLEN, an individual; CAMP BENCH HOLDINGS, LLC, an Idaho limited liability company; CAMP BENCH RIVER HOLDING, LLC, an Idaho limited liability company; CAMPBELL FARMS, INC., an Idaho corporation,<br><br>          Plaintiffs,<br>v.<br><br>NEIL CAMPBELL, an individual,<br><br>          Defendant. | Case No. 4:20-cv-00218-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Neil Campbell's Motion to Expedite (Dkt. 60) in which he seeks a suspension or stay of the Court's permanent injunction (Dkt. 59). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide this final motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court DENIES the motion.

## II. BACKGROUND

The Court will not repeat all the facts of this case because the parties and the Court are well acquainted with them. *See* Dkts. 39, 59. As relevant here, on February 25, 2021, the Court issued a permanent injunction. Dkt. 59. Finding all the equitable factors for

specific performance and for a permanent injunction met, the Court ordered Campbell to perform his obligations under the parties' contract ("Contract"). *Id.* Specifically, the Court required Campbell to "assign his interests in the Entities to Allen through an escrow arrangement to be coordinated by Allen . . . no later than seven (7) calendar days from the date of th[e] Order." *Id.* at 23.

At the proverbial eleventh hour, Campbell filed the instant motion requesting the Court to suspend or stay its injunction. Dkt. 60. Because of the time-sensitive nature of the matter, the Court hastened the briefing. Dkt. 61. Plaintiffs Michael Allen and the above-entitled entities ("the Entities") assiduously opposed Campbell's motion. Dkt. 62. Campbell replied. Dkt. 63.[1] That matter is ripe for adjudication.

### III. ANALYSIS

Campbell requests a suspension or stay of the permanent injunction and advances several arguments to that end. Before addressing Campbell's arguments, however, the Court notes that Campbell neglected both to cite any authority and to address the legal standard and requirements for a suspension or stay of an injunction in his motion. *See Golden Gate Restaurant Ass'n v. City & Cty. of S.F.*, 512 F.3d 1112, 1115 (9th Cir. 2008) (setting forth "the factors regulating the issuance of a stay" (cleaned up)); *see also* Fed. R. Civ. P. 62; *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). He simply leaves out the standard, its factors, and how his arguments meet that standard. Thus, on that ground alone

---

[1] The Court has been abundantly patient and magnanimous with Campbell throughout this case. From filing multiple motions to dismiss and not responding to arguments and rulings, to not complying with the local rules and filing documents late—including this Reply—Campbell has pushed the procedural limits this entire case. With this context in mind, someone less familiar with this case can more easily understand the Court's analysis.

MEMORANDUM DECISION AND ORDER - 2

Campbell has failed to carry his burden of persuasion.

Moreover, as Allen and the Entities correctly note, Campbell cannot meet the standard for a stay even if he had addressed it: "Campbell is not likely to succeed on the merits of an appeal. The standard of review would be an abuse of discretion, and the Court's decision does no injustice to Campbell (indeed the hope is that it saves both Allen and Campbell from potential exposure associated with foreclosure). Campbell would also not be irreparably harmed in the absence of a stay. If he were successful on appeal, the Court could unwind the transaction—giving Campbell back his stock in Campbell Farms and his economic interest in the LLCs. By contrast, granting the stay assures foreclosure of Camp River's commercial building—causing irreparable injury. Holding parties to their contracts is in the public interest, so that factor also disfavors a stay." Dkt. 62, at 11. The Court fully agrees with these assertions.

Additionally, none of Campbell's arguments are persuasive. First, Campbell contends that a suspension or stay of the permanent injunction is proper because the Contract violates the statute of frauds under Idaho law. The Court has already rejected the assertion that the statute of frauds invalidates the Contract. Res judicata bars the argument. As the Court plainly put it in its previous Order, "The Contract has been adjudged as valid and enforceable, and all arguments that there is an invalid Contract are barred." Dkt. 59, at 9 n.6; *id.* at 12 ("Allen is correct that res judicata bars Campbell's counterclaims and defenses to the extent that they relate to the validity and enforceability of the Contract."). The *Rooker–Feldman* doctrine also bars the argument because this Court is not permitted to act as an appellate court to state court judgments. But, of course, the Court already

MEMORANDUM DECISION AND ORDER - 3

explained this as well. *Id.* at 13 ("Additionally, such a claim is not properly before the Court due to the *Rooker–Feldman* doctrine. . . . To hold that the Contract is void would fly in the face of this doctrine.").² In short, Campbell's first argument is unavailing.

This particular argument is worse, though, than simply being unsuccessful. The argument evinces a lack of respect for the state court, this Court, and the Contract to which he is subject. Indeed, the state court concluded the Contract was valid and enforceable. The language of the state court declaratory judgment provides the relevant contractual provision: "in exchange for . . . the 180-190 acres *identified in you[r] November 20th letter*, and the buildings, fixtures, and structures located thereon, free and clear of any encumbrance, debt, or lien . . . ." *Id.* at 3 (emphasis added). The first page of this letter speaks of "approximately 180-190 acres, including the farm buildings, not encumbered by the bank or CRP contracts" and it references a "map outlining the proposed acreage" in a rough outline from Google maps. And another document memorializes that the acreage is 187.699. Campbell knew and agreed to the property description and acreage he was to receive under the Contract, as found by the state court. Hence his continued arguments otherwise pay no respect to the state court's settled judgment.³

---

² Allen and the Entities also argue that the equitable estoppel doctrine, the waiver doctrine, and the statute of frauds itself all prevent Campbell's argument. Dkt. 62, at 11–12. The Court doesn't necessarily disagree; it merely need not address those arguments due to its clear rulings noted above and for reasons of judicial economy.

³ It is worth noting that all state court appeals have ended, and none were even related to this issue. Dkt. 29, at 13–14. Campbell claims that the state court did not address the statute of frauds issue and that it can be dealt with here because the state court merely found the Contract had been formed, not that it was enforceable. But the quotes from the state court in Campbell's own Reply contradict this legal position, e.g., "the contract is enforceable." Dkt. 63, at 2–3. Moreover, res judiciata and the *Rooker–Feldman* doctrine are implicated, as this Court has previously explained. The Court will not re-explain these principles of law merely because Campbell refuses to accept them.

MEMORANDUM DECISION AND ORDER - 4

Campbell also knew that this Court barred arguments regarding the statute of frauds, as is clear from the Court's previous Order. Yet he once again propounds such a claim. Notably, he does not ask the Court to reconsider its ruling; rather, he advances his argument as if the Court is considering a novel issue. He does not grapple with the Court's previous rationale in the slightest. This is a blatant affront to the Court's ruling. Lastly, he continues to breach the Contract *he voluntarily entered into*, and which this Court ordered him to uphold, by not performing his obligations under the Contract.

Simply put, the Court does not appreciate Campbell's litigation tactics and will not allow Campbell's disrespect for court judgments to persist. Any more frivolous arguments, particularly regarding the validity of the Contract, will open him up to sanctions.

Next, Campbell argues that the quitclaim deed submitted by Allen is "false and invalid as the parties never agreed to the amount of acreage to be transferred to Campbell." Dkt. 60-1, at 11. The Contract and related documents conclusively contradict this argument as explained above. In short, the underlying factual premise of Campbell's argument is inaccurate—the quitclaim deed is true and valid—and therefore his argument is unpersuasive.

Campbell then asserts that Allen has not secured financing that will release Campbell from his obligations to the Entities. Campbell's support for this assertion is that First Bank has not approved any refinancing or financing, as its representative told him during a recent phone call. However, this assertion is inaccurate. It myopically focuses on First Bank and implies that it is the only entity that can finance the loans. Allen credibly demonstrated at the injunction hearing that he does have current financing approval—a

hard money offer from a different lender. *See* Dkt. 52, at 45; Exs. 1013, 1014.[4] Thus, contrary to Campbell's claim, Allen and the Entities are ready, willing, and able to perform. It is *still* Campbell's fault, and only Campbell's fault, that the Contract has not been fulfilled.[5]

Campbell argues that Allen has unclean hands and should not be entitled to equitable relief under Idaho law due to his dishonesty in this case. However, it is Campbell whose hands are unclean. Allen has attempted to fulfill the Contract during this entire case. All the while, Campbell has attempted time and time again to frustrate the Contract. Moreover, the Court does not find an instance of dishonesty from Allen in this case. The Court takes charges of perjury and misrepresentation very seriously, but Campbell's allegations to support such a claim are simply unsubstantiated. Therefore, Allen is not barred from equitable relief.

Campbell also contends that suspension or stay of the permanent injunction is warranted and will cause no harm to Allen and the Entities. His support for this, again, is his unsubstantiated allegation that Allen cannot perform. He claims that, because Allen cannot perform, his own lack of performance cannot harm Allen. As has been explained,

---

[4] At the same time, Allen says he is working on getting re-approved for traditional long-term financing to avoid the added expenses (i.e. damages) associated with the hard money loans he was approved for at the time of the hearing. Campbell contends that, if Allen has approval from a hard money lender to pay off the First Bank loans, he should pay them off to release Campbell. Dkt. 63, at 5–6. Again, this flies in the face of the Court's previous Order and shows that Campbell does not respect the Court's edicts.

[5] Campbell also asserts that Allen lied about First Bank requiring escrow. However, Allen never represented that First Bank required an escrow agreement—the testimony at the hearing was clear that the Title Company required Campbell's sign off to remove any cloud on title and provide the Bank a satisfactory title insurance policy.

MEMORANDUM DECISION AND ORDER - 6

however, this claim is without merit. Allen has proven that he can and will perform. Campbell pivots, and then asserts that *he* will be irreparably harmed if he has to forfeit his stock in Campbell Farms, Inc. But that is the bargain he agreed to in the Contract, so it is not a harm. And, as noted, even if it were, such a harm would not be irreparable because the court could order those interests to be restored to him. Accordingly, the Court does not deem the issue of harm a basis to suspend or stay its ruling.

Lastly, in an odd move, Campbell seems to offer a new deal to Allen and the Entities—and the Court. He says that he will give up his interest in two of the Entities—Camp Bench Holdings, LLC and Camp River Holding, LLC—in exchange for $85,000. Dkt. 60-1, at 3. However, he does not want to transfer his interest in Campbell Farms, Inc. The Court is not negotiating a new contract with Campbell, which is essentially what he seeks to do. Campbell's proposal diverges from the provisions to which he freely and voluntarily entered into when he agreed to the Contract. It also implicitly presupposes that the money should be exchanged for his interest in the former two Entities, and the real property should be exchanged for his interest in the latter Entity, as if he could separate the deal he agreed to in this piecemeal fashion. The Contract contains no terms to support this position. The Court has issued its order of specific performance. Campbell must perform or he will subject himself to the Court's powers under Federal Rule of Civil Procedure 70 as he was previously warned. Dkt. 59, at 21–22 & n.13.

## IV. CONCLUSION

For the foregoing reasons, Campbell has not carried his burden of persuading the Court that a suspension or stay of the permanent injunction is warranted in this case.

MEMORANDUM DECISION AND ORDER - 7

Campbell must comply with the Court's previous Order (Dkt. 59) immediately. If he does not, the Court will exercise its powers under Federal Rule of Civil Procedure 70(b) and (e).

## V. ORDER

The Court HEREBY ORDERS:

1. Defendant's Motion to Expedite (Dkt. 60) is DENIED. Defendant's request for a suspension or stay of the permanent injunction is DENIED.

2. Defendant shall comply with the Court's previous Order (Dkt. 59) immediately upon notice of this Order. Otherwise, the Court will take whatever measures it deems appropriate under Federal Rule of Civil Procedure 70, including, but not limited to, (1) divesting Campbell of his interests in the Entities and vesting them in Allen and/or (2) holding Campbell in contempt and imposing sanctions.

DATED: March 5, 2021

David C. Nye
Chief U.S. District Court Judge