UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL ALLEN, an individual; CAMP BENCH HOLDINGS, LLC, an Idaho limited liability company; CAMP BENCH RIVER HOLDING, LLC, an Idaho limited liability company; CAMPBELL FARMS, INC., an Idaho corporation,<br><br>    Plaintiffs,<br>v.<br><br>NEIL CAMPBELL, an individual,<br><br>    Defendant. | Case No. 4:20-cv-00218-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiffs' Emergency Motion for Order to Show Cause (Dkt. 70) in which Allen and the business entity Plaintiffs ("the Entities") assert that Defendant Neil Campbell has reneged on his required performance to convey his interests in the Entities to Allen through an escrow agreement as previously ordered by the Court—twice. *See* Dkts. 59, 65.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide this motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons set forth below, the Court divests Campbell of his interests in the

Entities, vests them in Allen, and will hold further proceedings, at a later date, to assess the issue of appropriate sanctions.

## II. BACKGROUND

The Court will not repeat all the facts of this case because the parties and the Court are well acquainted with them. *See generally* Dkts. 39, 59. As relevant here, on February 25, 2021, the Court issued a permanent injunction. Dkt. 59. Finding all the equitable factors for specific performance and for a permanent injunction met, the Court ordered Campbell to perform his obligations under the parties' contract ("Contract"). *Id.* Specifically, the Court required Campbell to "assign his interests in the Entities to Allen through an escrow arrangement to be coordinated by Allen . . . no later than seven (7) calendar days from the date of th[e] Order." *Id.* at 23. One of many reasons for the truncated schedule to perform was the pressing April 6, 2021 foreclosure sale that has the potential of causing irreparable injury as previously explained. *See id.* at 22.

At the proverbial eleventh hour of the time to comply, Campbell filed a motion requesting the Court to suspend or stay its injunction. Dkt. 60. Campbell did not comply with the Court's Order to assign his interests in the Entities to Allen in the timeframe the Court allotted, precipitating Allen and the Entities' first Motion for Order to Show Cause on Contempt. Dkt. 64. That same day, the Court denied Campbell's motion for a stay and ordered immediate compliance with the injunction on penalty of contempt and/or sanctions. Dkt. 65. In its Order, the Court explained why Campbell's motion for a stay was entirely unconvincing. The Court warned Campbell that any more questionable moves would "open him up to sanctions," that the Court did "not appreciate Campbell's litigation

tactics," and that it would "not allow Campbell's disrespect for court judgments to persist." *Id.* at 5. The Court also cautioned Campbell that he was required to "perform or he w[ould] subject himself to the Court's powers under Federal Rule of Civil Procedure 70 as he was previously warned" in the original injunction. *Id.* at 7. (citing Dkt. 59, at 21–22 & n.13 (explaining that, if Campbell refused to perform, the Court could divest him of his interest in the Entities and hold him in contempt under Federal Rule of Civil Procedure 70(b), (e), respectively)); *see also id.* at 8 (providing notice to Campbell once again that, if he did not comply with the Court's Orders, the Court would "exercise its powers under Federal Rule of Civil Procedure 70(b) and (e)"). At the end of its Order, the Court made clear that Campbell's further noncompliance could lead to the imposition of sanctions. *Id.*

Seeming to understand the gravity of the situation, Campbell signed and delivered a document to escrow purporting to comply with the Court's Orders. *See* Dkt. 66. This led Allen and the Entities to withdraw their first motion to attempt to secure compliance with the Court's Orders. Shortly before escrow could close, Campbell filed a Notice of Appeal. Dkt. 71. Notably, Campbell did not file or otherwise flag the notice as an emergency, nor did he seek to overturn the Court's denial of his motion requesting a stay. *See id.* (appealing the Court's ruling as to subject-matter jurisdiction, ruling as to failure to state a claim, and granting of a permanent injunction).

With notice of Campbell's pending appeal and the closings on the new financing transactions scheduled for early on during the week of March 29, 2021, the title company asked Campbell to confirm that he was not contesting the validity of the escrow agreement or assignments he delivered. Once again, at the last minute and in response to this inquiry,

Campbell (through his pro hac vice counsel) repudiated the validity of the escrow agreement he signed as well as the assignments despite the Court's Orders. Dkt. 73, Ex. A. In particular, Campbell asserted that "he is CONTESTING, *inter alia*, the legal validity of the three Assignments of Interest. . . . Mr. Campbell did not sign the Escrow Agreement or the Assignments of Interests willingly but, rather was forced to do so under threat of being held in contempt of court by the United States District Court for the District of Idaho." *Id.* at 7.

Allen and the Entities promptly filed a second Motion for Order to Show Cause on Contempt bringing this repudiation to the Court's attention. Dkts. 73, 74. After reviewing Allen and the Entities' motion and memorandum, and with the time-sensitive nature of the situation in mind, the Court issued an Order to Show Cause. Dkt. 76. The Order required Campbell to show "why the Court should not hold [him] in contempt for violating the Court's clear Orders." *Id.* It also required Campbell to "explain why sanctions are not appropriate against [him] and [his] lead, out-of-state attorney for violating" the Court's Orders. *Id.* Pursuant to the Court's Order to Show Cause, Campbell filed a Response. Dkt. 80. Campbell contends that he did not violate the Court's Orders. *Id*.

### III. LEGAL STANDARD

District courts have jurisdiction to enforce their orders, even though a notice of appeal has been filed. *E.g.*, *United States v. Carter*, 17 F.3d 396 (9th Cir. 1994) ("Absent a stay, district courts have the authority to enforce their orders including holding parties in civil contempt while an appeal of the underlying enforcement order is pending."). Otherwise, a party could entirely undermine judicial proceedings by defying a court's order

MEMORANDUM DECISION AND ORDER - 4

during the pendency of an appeal without immediate consequence. The federal judiciary is not so helpless. *See Land v. Dollar*, 190 F.2d 366, 379 (D.C. Cir. 1951) ("An order issued by a court having jurisdiction of the persons and subject matter must be obeyed, even though the defendants may sincerely believe that the order is ineffective and will finally be vacated, even though the Act upon which the order is based is void, even though the order is actually set aside on appeal, even though the basic action becomes moot . . . because of the necessities of orderly process under our constitutional system of government.").

Federal Rule of Civil Procedure 70 is derived from rules of equity and provides significant power to district courts in a limited scope. *See Hamilton v. MacDonald*, 503 F.2d 1138, 1149 (9th Cir. 1974). When a party fails to comply with an order to perform a specific act within the time specified, the court may "enter a judgment divesting any party's title and vesting it in others," which "has the effect of a legally executed conveyance." Fed. R. Civ. P. 70(b).

Additionally, "courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Sandpoint Gas N Go & Lube Center, Inc.*, No. 2:14-CV-00357-BLW, 2018 WL 6310268, at *1 (D. Idaho Dec. 3, 2018) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). Rule 70 also provides that "[t]he court may also hold the disobedient party in contempt." Fed. R. Civ. P. 70(e). The contempt sanction has been called "[t]he most prominent" of the courts inherent powers to protect "the due and orderly administration of justice" and to maintain "the authority and dignity of the court." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980) (cleaned up). Among its many tools, a court has the authority to dismiss cases, assess attorney's fees and costs, and impose fines on

parties and their attorneys. *Id.* at 765–66.

"A court has wide latitude when it determines whether there has been a contemptuous defiance of its order." *McCabe v. Arave*, 827 F.2d 634, 640 (9th Cir. 1987); *accord Neebars, Inc. v. Long Bar Grinding, Inc.*, 438 F.2d 47, 48 (9th Cir. 1971) (per curiam). "While a court has discretion to excuse minor, technical, or good faith violations of an injunction, it likewise has discretion to punish substantial violations" when they are proven by clear and convincing evidence. *Irwin v. Mascott*, 370 F.3d 924, 932 (9th Cir. 2004) (cleaned up). However, sanctions "should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Roadway Exp., Inc.*, 447 U.S. at 767; *see also Shillitani*, 384 U.S. at 371 ("In civil contempt, the contemnor is entitled to minimal due process.").

## IV. ANALYSIS

In this case, Campbell has now twice defied the Court's Order to perform his obligations under a contract that was expressly recognized as valid and enforceable by an Idaho state court. His blatant disrespect and disobedience to the state court's ruling and this Court's Orders cannot, and will not, be permitted. Campbell cannot say that he has taken reasonable measures or substantially complied with the Court's Orders. Those Orders were to *actually* assign his interests to Allen through escrow; they most certainly were not to file a document in escrow appearing to comply with the Court's Order only to then thwart the closing of escrow at the last moment by representing that he is contesting the validity of the documents—which is precisely what Campbell has done here. This was yet another calculated effort made in bad faith to undermine the execution of a binding, enforceable

contract (to which Campbell voluntarily agreed) and the lawful mandates of this Court (to which Campbell is subject).[1]

The situation is simple. The Court ordered that the interests be conveyed. Campbell prevented them from being conveyed. Campbell's actions are in direct violation of both the letter and spirit of the Court's Injunction and subsequent Order.[2]

A few comments must be made with respect to Campbell's assertions to the title company. He asserts that he is contesting (1) "the legal validity of the three Assignments of Interest," (2) that he "did not sign the Escrow Agreement or the Assignments of Interests willingly," and (3) that he "was forced to do so under threat of being held in contempt of court." Dkt. 73, at 7. Taken together, these assertions further substantiate Campbell's unacceptable contemptuous attitude toward the Court and its Orders.

As for the first assertion, Campbell has no basis to contest the validity of the papers he signed in escrow. He was under court order to do so and attested in the very agreement he signed that the documents were genuine, effective, and capable of being relied on by the other parties involved.[3] Dkt. 74, at 3. He can, and indeed does appear to, contest the basis

---

[1] Additionally, the injunction called for Campbell to assign his interests so that the parties could perform their obligations, as the later language in the order clearly states. Thus, by saying the assignments were not valid, Campbell yet again frustrated the explicit purpose of the Court's Orders: performance of the parties' obligations under their contract.

[2] Campbell's citation to cases involving consent decrees is unpersuasive. "Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). At issue here was of course not a consent decree, but an Injunction and subsequent Order from the Court, which involved no negotiation. Regardless, even if Campbell's proposed rule were accepted (that contempt must be based on the language within the four corners of the Court's Orders), that rule has been met here for the reasons stated.

[3] And again, the contract that was deemed enforceable by a court of law required him to do so as well.

MEMORANDUM DECISION AND ORDER - 7

of the Court to order him to do so, but that is a distinct issue from the validity of his assignments. *See GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980) ("[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order."); *Land*, 190 F.2d at 379. Indeed, Campbell implicitly recognizes this distinction by the different way his Response phrases things versus how his correspondence to the title company did. Campbell now states that he is appealing the Court's Order which appeal "by its very nature contests the legal validity *of the Court's Order*." Dkt. 80, at 3 (emphasis added). Conversely, he represented to the title company that he was contesting the legal validity of *his assignments*. This is not a distinction without a difference and conveyed an intentionally incorrect message to the title company.

As for Campbell's third assertion regarding a "threat," the very situation he is in and any finding of contempt is of Campbell's own doing. Like he is doing now, Campbell has always had the option to follow an orderly procedure of filing an appeal to air his disagreements with the Court's Orders. But, by not following the law and the Court's Orders, he has chosen his own consequences. The Court is not to blame. What's more, being forced to do something is the very definition of how a court order works. *See Court Order*, Black's Law Dictionary (11th ed. 2019). And the Court's Orders were most assuredly not intended to be "threats," but fair notices of the fruits Campbell's choices

might bear and the lawful authority the Court has at its disposal.[4] Thus, Campbell's assertions to the title company are baseless and serve only to dig a deeper hole for himself.

Campbell suggests that he complied with the Court's Orders when he submitted his document into escrow. This suggestion willfully and completely misses the point. What Campbell did after is what matters: he contemptuously counteracted his compliance when he misrepresented the nature of his appeal to the title company to prevent escrow from closing. Plainly put, Campbell complied, but then he didn't. The second part is where he went array and constitutes his contempt.

Campbell also suggests that to say his assignments of interest remained valid and were not contested would have been a lie that would have affected his appeal. The law disagrees. Campbell could have truthfully said, as he does now in his Response, that he was contesting the Court's Orders, while still complying with the Court's mandate by not misrepresenting his position. Accurately stating this would not have undermined his appeal; rather, it would have been dutiful to his obligations under the law. *See GTE Sylvania, Inc.*, 445 U.S. at 386; *Land*, 190 F.2d at 379.

For this same reason, the claim of Campbell's counsel that they had three choices creates a false trilemma. They suggest that they could have (1) said nothing, (2) lied and said the assignments were valid, (3) or told the "truth" in making statements "entirely consistent" with Campbell's position when asked about the validity of the assignments.

---

[4] Regardless, establishing that the Court's Orders were "threats" is of no help to Campbell. Courts have described the scenario in just that way. *See Paramedics Electromedicina Comericial, Ltd. v. GE Med. Sys. Inf. Tech.*, 369 F.3d 645, 657 (2d Cir. 2004) ("A party who violates an injunction entered by the district court faces the *threat* of both civil and criminal contempt." (emphasis added)).

MEMORANDUM DECISION AND ORDER - 9

Dkt. 80, at 6–7. This argument is fallacious because a fourth option existed: tell the actual truth, which again, was that Campbell contested the Court's Order but wished to abide by its mandate and validly assign his interests in the Entities.[5]

In short, the Court finds by clear and convincing evidence that Campbell has contemptuously violated the Court's specific and definite Orders. *Cf. Irwin*, 370 F.3d at 932; *Paramedics*, 369 F.3d at 656 (holding that the district court's "finding of contempt was not an abuse of discretion" where the party "did not diligently attempt to comply with the district court's orders in a reasonable manner").

In addition, the Court exercises its power under Federal Rule of Civil Procedure 70(b) and its inherent powers to ensure that its Orders are enforced. The Court divests Campbell of his interests in the Entities. To be abundantly clear, Campbell's interests in Camp Bench Holdings, LLC; Camp Bench River Holding, LLC; and Campbell Farms, Inc.

---

[5] Just as Campbell has been found to have done already, he and his counsel are once again playing fast and loose with their statements. In the Court's Order denying Campbell's Motion to Dismiss for Lack of Subject-Matter Jurisdiction, the Court stated:

> Campbell's position on whether he is a member of Plaintiff LLCs has wavered before this Court and the state court based on the exigencies of the moment. . . . In his initial notice of removal, he was a member. He then was not one in his amended notice of removal—likely to avoid remand. In his state court answer, he was still not a member, but then at his deposition, he simply was not "treated like a member." Now, he is a member again—in an effort to have this case dismissed. These wavering responses fit perfectly within the definition of playing "fast and loose" with the courts to game a desired result, and they therefore meet the minority rule.

Dkt. 29, at 11 (first citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); and then citing *Risetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 601 (9th Cir. 1996)). Obviously, judicial estoppel applies to legal positions presented to courts, whereas here one of Campbell's comments was made to the title company. Nevertheless, this demonstrates Campbell's willingness to inaccurately state things when it suits his needs.

are hereby revoked from him and vested in Allen by Order of the Court, operation of law, and the Court's equitable powers.

On the topics of contempt and sanctions, *Irwin* is a particularly illustrative case. There, a class of plaintiffs alleged unlawful debt collection practices. *Id.* at 927. The trial court permanently enjoined the defendants "from sending unlawful collection letters," but the defendants continued to violate the injunction. *Id.* at 928. When the plaintiffs moved for an order of contempt, the trial court gave the defendants "one last chance to comply with the [i]njunction" and warned them that further violation of the injunction would lead to sanctions. *Id.* The defendants, nevertheless, persisted in their unlawful practices. *Id.* Finding the defendants in contempt of the court's two orders, the trial court "ordered them to pay $10,000, costs, and attorneys' fees to the plaintiff class." *Id.* at 929. On appeal, the Ninth Circuit affirmed the finding of contempt and imposition of sanctions because the evidence clearly established the defendants' violations and sanctions were within the trial court's discretion. *Id.* at 932 (noting that the defendants "had not engaged in a good faith effort to substantially comply" with the orders and that "they resisted the court's authority for as long as they could get away with it").

The Court views *Irwin* as strikingly analogous to the case at hand. Both cases involve unlawful actions by a defendant, a permanent injunction, subsequent violations thereof, a subsequent chance to comply, continued clear violations of the injunction and subsequent orders, and a finding of contempt. *Irwin* directly supports the Court's finding of Campbell in contempt.

The Court will address the issue of appropriate sanctions, however, including but

not limited to, attorney's fees, costs, and fines against both Campbell and attorneys at a future date to afford the parties the procedural opportunity for a hearing. *See Roadway Exp., Inc.*, 447 U.S. at 767. The Court will schedule a hearing on the matter as soon as its schedule permits. Campbell has already briefed this issue per the Court's Order to Show Cause. Dkts. 76, 80. Allen will have until 5:00 p.m. on April 9, 2021, to file a reply—if any.

## V. ORDER

The Court HEREBY ORDRES:

1. Plaintiffs' second Motion for Order to Show Cause on Contempt (Dkt. 73) is GRANTED as explained above.

2. Defendant Neil Campbell is divested of his interests in Camp Bench Holdings, LLC; Camp Bench River Holding, LLC; and Campbell Farms, Inc. Those interests are vested in Plaintiff Michael Allen by Order of the Court, operation of law, and equity under Federal Rule of Civil Procedure 70(b) and the Court's inherent powers.

3. A hearing will be scheduled on the matter of appropriate sanctions against Campbell. Allen will have until 5:00 p.m. on April 9, 2021, to file a reply—if any.

DATED: April 2, 2021

David C. Nye
Chief U.S. District Court Judge