UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL ALLEN, an individual; CAMP BENCH HOLDINGS, LLC, an Idaho limited liability company; CAMP BENCH RIVER HOLDING, LLC, an Idaho limited liability company; CAMPBELL FARMS, INC., an Idaho corporation,<br><br>      Plaintiffs,<br>v.<br><br>NEIL CAMPBELL, an individual,<br><br>      Defendant. | Case No. 4:20-cv-00218-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

On April 2, 2021, the Court held Defendant Neil Campbell in contempt for defying the Court's Orders which required him to convey his interests in the above-captioned Plaintiff business entities to Allen. *See* Dkt. 81. Beyond divesting Campbell of his interests in the entities, the Court scheduled a hearing to address the issue of appropriate sanctions against Campbell. *Id*. at 10–12. On May 4, 2021, the Court held that hearing and took the issue of sanctions under advisement. For the following reasons, the Court will impose some but not all of the proposed sanctions against Campbell.

# II. BACKGROUND

The matter at hand stems from a contract. The contract contemplates that Allen will

convey real property and money to Campbell in exchange for Campbell's interest in the entities. The specific terms of the contract, as found by an Idaho state court, are the following:

> [Campbell] accepts the last verbal offer relayed by you on behalf of [Allen]. [Campbell] agrees to transfer his interest in Campbell Farms, Camp Bench, and Camp River to Allen in exchange for (1) the 180–190 acres identified in you [sic] November 20th letter, and the buildings, fixtures, and structures located thereon, free and clear of any encumbrance, debt, or lien, (2) the payment by [Allen] to [Campbell] of a lump sum of $85,000, (3) a mutual release between the parties, and (4) each party paying their own attorney fees—all contingent upon [Campbell]'s release from any obligations, including without limitation any personal guarantees, relating to these three entities.

Dkt. 7, at 3.

The Idaho state court not only recognized those terms of the contract, but ruled that it is valid and enforceable. In this subsequent lawsuit, this Court twice ordered the parties to perform. *See* Dkts. 39, 59, 65. After the Court's second Order requiring performance, Campbell signed and delivered a document to escrow purporting to comply with the Court's Orders. *See* Dkt. 66.

Shortly before escrow could close on the parties' contractual obligations, Campbell filed a Notice of Appeal. Dkt. 71. Notably, Campbell did not file or otherwise flag the notice as an emergency, nor did he seek to overturn the Court's denial of his motion requesting a stay. *See id.* (appealing the Court's ruling as to subject-matter jurisdiction, its ruling as to failure to state a claim, and its granting of a permanent injunction).

With notice of Campbell's pending appeal and the closings on the new financing transactions scheduled for early on during the week of March 29, 2021, the title company

asked Campbell to confirm that he was not contesting the validity of the escrow agreement or assignments he delivered. At the last minute, and in response to this inquiry, Campbell (through his pro hac vice counsel) repudiated the validity of the escrow agreement he signed as well as the assignments despite the Court's Orders. Dkt. 73, Ex. A. In particular, Campbell asserted that "he is CONTESTING, inter alia, the legal validity of the three Assignments of Interest. . . . Mr. Campbell did not sign the Escrow Agreement or the Assignments of Interests willingly but, rather was forced to do so under threat of being held in contempt of court by the United States District Court for the District of Idaho." *Id.* at 7.

Plaintiffs promptly filed a second Motion for Order to Show Cause on Contempt bringing this repudiation to the Court's attention. Dkts. 73–74. After reviewing Plaintiffs' motion and memorandum, and with the time-sensitive nature of the situation in mind, the Court issued an Order to Show Cause. Dkt. 76. The Order required Campbell to show "why the Court should not hold [him] in contempt for violating the Court's clear Orders." *Id.* It also required Campbell to "explain why sanctions are not appropriate against [him] and [his] lead, out-of-state attorney for violating" the Court's Orders. *Id.*

Pursuant to the Court's Order to Show Cause, Campbell filed a Response. Dkt. 80. Campbell contended that he did not violate the Court's Orders. *Id.* The Court disagreed with Campbell's arguments, found him in contempt, and performed one of his twice Court-ordered contractual obligations for him (divesting him of his interests in the Plaintiff entities). Dkt. 81, at 7–12. The Court also scheduled a hearing on the matter of appropriate

sanctions. *Id*. at 11–12. On May 4, 2021, the Court held the hearing on that matter.[1] The issue of appropriate sanctions against Campbell is accordingly ripe before the Court.

## III. LEGAL STANDARD

District courts have jurisdiction to enforce their orders, even though a notice of appeal has been filed. *E.g.*, *United States v. Carter*, 17 F.3d 396 (9th Cir. 1994) ("Absent a stay, district courts have the authority to enforce their orders including holding parties in civil contempt while an appeal of the underlying enforcement order is pending."). Otherwise, a party could entirely undermine judicial proceedings by defying a court's order during the pendency of an appeal without immediate consequence. The federal judiciary is not so helpless. *See Land v. Dollar*, 190 F.2d 366, 379 (D.C. Cir. 1951) ("An order issued by a court having jurisdiction of the persons and subject matter must be obeyed, even

---

[1] At the hearing, Campbell sought to offer testimony from his out-of-state attorney regarding what she said to the title company about her intent behind the letter. Plaintiffs objected on the grounds of hearsay under Federal Rules of Evidence 801 and 802. The Court treated the testimony as a proffer of evidence, allowed it to be given, and withheld ruling until this written decision. The statements Campbell's out-of-state attorney made to the title company were indeed hearsay, and thus the testimony about them is stricken and excluded. They were offered for no other purpose than the truth of the matter asserted, and Campbell did not argue that any particular exception applied. Moreover, the Court sua sponte analyzed Federal Rule of Evidence 801(d) and did not find it applicable, especially because there was no express or implied charge of fabrication. *See United States v. Romo-Chavez*, 681 F.3d 955, 959 (9th Cir. 2012) ("When an out-of-court statement is offered to prove the truth of the matter asserted, it is hearsay and generally inadmissible."); *United States v. Check*, 582 F.2d 668, 681 (2d Cir. 1978) ("[A] witness's prior statements offered to prove the truth of the matters asserted therein are not immunized from the proscriptive effect of the hearsay rule."); *see also* 2 McCormick on Evidence § 251 (8th ed. 2020) ("The traditional view has been that a prior statement, even one made by the witness, is hearsay if it is offered to prove the matters asserted therein."); Robert R. Little & Stephen L. Rispoli, *The Hearsay Paradox: Declarant-Witnesses' Own Out-of-Court Statements*, 70 Baylor L. Rev. 843, 877 (2018) ("A witness's own out-of-court statement offered for the truth of the matter asserted is hearsay."); Daniel J. Capra, *Prior Statements of Testifying Witnesses: Drafting Choices to Eliminate or Loosen the Strictures of the Hearsay Rule*, 84 Fordham L. Rev. 1429, 1453 (2016) (noting the "forty years of practice in which prior witness statements have been evaluated as hearsay").

That said, it makes little difference whether the statements were hearsay because they all went to the attorney's subjective intent for sending the letter, but contempt and its sanctions are decided on an objective standard, not a subjective standard. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019).

though the defendants may sincerely believe that the order is ineffective and will finally be vacated, even though the Act upon which the order is based is void, even though the order is actually set aside on appeal, even though the basic action becomes moot . . . because of the necessities of orderly process under our constitutional system of government.").

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Sandpoint Gas N Go & Lube Center, Inc.*, No. 2:14-CV-00357-BLW, 2018 WL 6310268, at *1 (D. Idaho Dec. 3, 2018) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). Rule 70 also provides that "[t]he court may also hold the disobedient party in contempt." Fed. R. Civ. P. 70(e). The contempt sanction has been called "[t]he most prominent" of the courts inherent powers to protect "the due and orderly administration of justice" and to maintain "the authority and dignity of the court." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980) (cleaned up). Among its many tools, a court has the authority to dismiss cases, assess attorney's fees and costs, and impose fines on parties and their attorneys. *Id.* at 765–66.

"A court's contempt powers are broadly divided into two categories: civil contempt and criminal contempt." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016). Within the realm of civil contempt, there are two types: coercive and compensatory. *Id.* at 629. Civil coercive contempt proceedings are used to bring the party into compliance with a court's order, whereas civil compensatory contempt is remedial in nature and is used to compensate an aggrieved party for its resulting losses. *Id.*

"A court has wide latitude when it determines whether there has been a contemptuous defiance of its order." *McCabe v. Arave*, 827 F.2d 634, 640 (9th Cir. 1987);

*accord Neebars, Inc. v. Long Bar Grinding, Inc.*, 438 F.2d 47, 48 (9th Cir. 1971) (per curiam). "While a court has discretion to excuse minor, technical, or good faith violations of an injunction, it likewise has discretion to punish substantial violations" when they are proven by clear and convincing evidence. *Irwin v. Mascott*, 370 F.3d 924, 932 (9th Cir. 2004) (cleaned up).

## IV. ANALYSIS

As noted, the Court has already found Campbell in contempt. Dkt. 81, at 7–12. In the matter at hand, the Court is exercising its civil compensatory contempt power to impose certain sanctions on Campbell.

In their brief (Dkt. 86), and at the hearing, Plaintiffs asked the Court to impose five sanctions: (1) strike or excuse the contractual condition that Campbell be released from the loans with First Bank; (2) accept a deposit of Allen's $85,000 and the acreage deed and hold those items to offset damages caused by Campbell's contempt, which has greatly increased foreclosure; (3) declare the contract fully performed, the release effective, and therefore dismiss Campbell's counterclaims upon the aforementioned deposits; (4) revoke Campbell's out-of-state attorney's pro hac vice admission and disqualify her from further involvement in this case; and (5) award Allen $5,000 in attorney's fees for representation related to Campbell's contempt. In short, the Court will grant the first three requests but deny the fourth and fifth requests.

The first three requests are reasonably calculated to remediate the damage done by Campbell's contempt. The point of compensatory civil contempt sanctions is to put the aggrieved party in the position it would have been in but for the contemnor's actions or to

compensate the aggrieved party as much as possible. The possibility of foreclosure has always been a time-sensitive aspect of this case. If the contract had been performed, as the parties agreed and as this Court ordered twice, the potential foreclosure and the damages associated with it would not be impending and the parties could have moved forward having received the benefit of their bargain. Instead, Campbell chose to renege on his assigned interests through his counsel who is his agent. Consequently, Campbell cannot benefit from a release from those loans, his part of the bargain will be used to offset any damages caused from his contempt, and the contract will be considered fully performed the moment Allen deposits the money and deed with the Court, which in turn will warrant and operate as a dismissal of Campbell's counterclaims.[2] In other words, the Court grants Plaintiffs' first three requested sanctions because they approximate the benefit Allen would have received had Campbell complied with the Court's Orders. *Cf. Irwin*, 370 F.3d at 932 (affirming the trial court's finding of contempt and imposition of sanctions because the evidence clearly established the defendants' violations and sanctions were within the trial court's discretion); *id.* (noting that the defendants "had not engaged in a good faith effort to substantially comply" with the orders and "they resisted the court's authority for as long as they could get away with it").

On the other hand, the Court denies Plaintiffs' fourth and fifth requested sanctions. The fourth request is moot because Campbell's out-of-state attorney has withdrawn from this case. Dkt. 90. And the fifth request could have been an appropriate form of

---

[2] *See* Dkt. 59, at 12–13 ("Once the parties follow this Order, and the conditions of the Contract are performed, the release will then take effect.").

compensatory relief, but Plaintiffs did not put on sufficient evidence—or any evidence—regarding the attorney's fees and costs related to this matter. Thus, both the request to disqualify Campbell's out-of-state counsel from this case and the request for $5,000 in attorney's fees must be denied.[3]

Further sanctions against Campbell, in the form of a fine or otherwise, are unwarranted at this time because the evidence shows that he was unaware of the contents of the contemptuous letter. Instead, it was his out-of-state attorney who drafted and sent the letter. That said, his attorney who sent the letter was his agent, and the sanctions the Court imposes today are, therefore, warranted. As mentioned at the hearing, whether Plaintiffs pursue contempt proceedings against Campbell's attorneys remains up to Plaintiffs.

## V. ORDER

For the foregoing reasons, the Court HEREBY ORDRES:

1. Plaintiffs' requested sanctions are GRANTED in PART and DENIED in PART as explained above.

2. Plaintiffs must submit the $85,000 and deed of acreage with the Clerk of Court's office within fourteen days of this Order.

3. Upon delivery of those items, Campbell's counterclaims will be dismissed by operation of the parties' contracted mutual release and the law. *See* Dkt. 59, at

---

[3] Of course, this in no way precludes Plaintiffs from seeking those attorney's fees in a supplement to their Motion for Attorney Fees (Dkt. 67).

12–13. No further Order from the Court will be necessary to effectuate said release.

DATED: July 13, 2021

_____
David C. Nye
Chief U.S. District Court Judge